RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206
File Name: 10a0036p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

_____

UNITED STATES OF AMERICA,

               *Plaintiff-Appellee,*

    *v.*

No. 08-5211

KENNETH FRAZIER,

               *Defendant-Appellant.*

Appeal from the United States District Court
for the Eastern District of Tennessee at Greeneville.
No. 07-00010-001—J. Ronnie Greer, District Judge.

Argued: January 20, 2010

Decided and Filed: February 12, 2010

Before: SILER, MOORE, and CLAY, Circuit Judges.

_____

**COUNSEL**

**ARGUED:** Jonathan M. Holcomb, HOLCOMB LAW OFFICE, Morristown, Tennessee, for Appellant. M. Neil Smith, Jr., ASSISTANT UNITED STATES ATTORNEY, Greeneville, Tennessee, for Appellee. **ON BRIEF:** Jonathan M. Holcomb, HOLCOMB LAW OFFICE, Morristown, Tennessee, for Appellant. M. Neil Smith, Jr., ASSISTANT UNITED STATES ATTORNEY, Greeneville, Tennessee, for Appellee.

_____

**OPINION**

_____

CLAY, Circuit Judge. Defendant-appellant, Kenneth Frazier, appeals from his conviction on August 30, 2007 by a jury on two counts: Count 1, conducting an illegal gambling business in violation of 18 U.S.C. § 1955; and Count 2, sponsoring and exhibiting animals in an animal fighting venture in violation of 7 U.S.C. § 2156(a). Defendant moved for judgment of acquittal regarding Count 1 at the close of the government's case, which the

district court denied, and Defendant now appeals that ruling. Defendant did not renew his motion at the close of all evidence in the case. For the reasons set forth below, we **AFFIRM** the district court's ruling denying the motion for judgment of acquittal.

## BACKGROUND

Defendant owned and operated the "440 pit" in Cocke County, Tennessee. The 440 pit was a cockfighting pit on property owned by Defendant and his wife. Cockfights were held in three rings at the 440 pit on Saturday evenings between November and late July or early August. Defendant charged a $20 entrance fee for spectators and maintained a concession stand on the premises.

Owners of roosters also paid an entrance fee to attend the cockfights, but were additionally charged an entry fee of $100 for the fights to contribute to a purse that was split among the winning teams. On average about 50 teams competed, resulting in a purse of about $5,000 each night. Defendant employed a referee and had owners and spectators coming from various locations, including other states such as North Carolina. One witness testified that most of the birds and owners came from outside of Tennessee. The concession stand was operated by Deborah Huff, who paid rent to Defendant for the privilege of running the stand. Spectators often bet among themselves on the outcomes of the fights.

Defendant was indicted, along with three co-defendants, by grand jury indictment on February 13, 2007 for two counts: Count 1, conducting an illegal gambling business in violation of 18 U.S.C. § 1955; and Count 2, sponsoring and exhibiting animals in an animal fighting venture in violation of 7 U.S.C. § 2156(a). In a superseding indictment on March 13, 2007, another co-defendant was added for the same counts. All five co-defendants moved to dismiss Count 1, which was denied by the district court on April 27, 2007.

Defendant, and his co-defendants, proceeded to trial on August 27, 2007. Most of the information presented by the government at trial was collected by undercover FBI agents who attended cockfights at the 440 pit. The government also called witnesses who had assisted Defendant in setting up and running the 440 pit, informants who had attended and participated in cockfights at the 440 pits, and the owner and operator of another cockfighting pit that was also part of the FBI investigation leading to Defendant's arrest. Each of the

witnesses testified to seeing Defendant's participation in the collection of entrance fees, entry fees for rooster owners, and other activities in furtherance of running the cockfighting pit.

On August 29, 2007, at the close of the government's case-in-chief, Defendant moved for judgment of acquittal on Count 1, which was denied. Defendant made no such motion at the close of all evidence in the case. The jury returned a guilty verdict on both counts on August 30, 2007 as to Defendant and one co-defendant. The other co-defendants were found guilty of only Count 2. Defendant was sentenced on January 20, 2008 to 24 months' incarceration and three years supervised release. This timely appeal followed.

## DISCUSSION

### A.     Standard of Review

Defendant did not renew his motion for judgment of acquittal, pursuant to Rule 29 of the Federal Rules of Criminal Procedure, at the close of all evidence, which was necessary to preserve his motion for appeal. Therefore, this Court must review the district court's denial of his motion for a "manifest miscarriage of justice." *United States v. Mack*, 159 F.3d 208, 216 (6th Cir. 1998) (quoting *United States v. Williams*, 940 F.2d 176, 180 (6th Cir. 1991)); *see also United States v. Payne,* 16 F.3d 1222 (Table), *3 (6th Cir. 1994) (referring to the standard of review as plain error as well as "manifest miscarriage of justice"). "A miscarriage of justice exists only if the record is devoid of evidence pointing to guilt." *United States v. Roberge*, 565 F.3d 1005, 1008 (6th Cir. 2009) (quoting *United States v. Price*, 134 F.3d 340, 350 (6th Cir. 1998)). Defendant attempts to argue for the standard of review that he would have received had his motion been renewed, but his argument is unavailing since he does not dispute the fact that the motion was not renewed at the close of all evidence.

### B.     Analysis

Defendant was indicted and convicted of running an illegal gambling business in violation of 18 U.S.C. § 1955. That statute defines the federal crime by direct reference to state law. It is a federal offense to conduct, finance, manage, supervise, direct, or own all or part of an illegal gambling business, which is defined as:

(1) "illegal gambling business" means a gambling business which--
    (i) is a violation of the law of a State or political subdivision in which it is conducted;
    (ii) involves five or more persons who conduct, finance, manage, supervise, direct, or own all or part of such business; and
    (iii) has been or remains in substantially continuous operation for a period in excess of thirty days or has a gross revenue of $2,000 in any single day.

18 U.S.C. § 1955(b). In Tennessee, gambling promotion is a Class B misdemeanor, defined as

(a) A person commits an offense who knowingly induces or aids another to engage in gambling, and:
    (1) Intends to derive or derives an economic benefit other than personal winnings from the gambling; or
    (2) Participates in the gambling and has, other than by virtue of skill or luck, a lesser risk of losing or greater chance of winning than one (1) or more of the other participants.

T.C.A. § 39-17-503. Aggravated gambling promotion – involvement in a gambling enterprise of two or more people regularly engaged in gambling promotion – is a felony offense. T.C.A. § 39-17-504. Betting on the outcome of a cockfight has long been a criminal offense characterized as gambling in Tennessee. *See Bagley v. State*, 20 Tenn. 486, *3 (1840). Any degree of participation in an illegal gambling business aside from being a mere bettor constitutes a violation of 18 U.S.C. § 1955. *See Sanabria v. United States*, 437 U.S. 54, 70 n. 26 (1978) (collecting cases).

Defendant argues that he did not intend to derive nor did he actually derive an economic benefit[1] from the gambling taking place at the 440 pit, and therefore the government failed to prove its case with regard to the element of the state law offense embedded in the federal statute Defendant was convicted of violating. Defendant does not dispute that he ran the cockfighting ring with his co-defendants and that he knew that two types of betting were taking place – spectators betting on the outcomes and owners of the roosters putting money into a pot with the winning roosters' owners splitting the

---

[1] "Economic benefit" is not specifically defined in the Tennessee statutes, but its ordinary meaning is a "benefit quantifiable in terms of money, such as revenue, net cash flow, net income." (http://www.businessdictionary.com/definition/economic-benefit.html, last accessed February 3, 2010). This ordinary meaning is essentially the same as the plain language meaning of the phrase, and this Court will therefore interpret the statute using this definition.

pot. Therefore, Defendant evidently is not challenging in this appeal the contention that the government presented proof that Defendant knowingly induced others to gamble.

Instead, Defendant argues that he did not derive an economic benefit from the gambling taking place at the cockfighting pit because he was not personally involved in it and received no cut of the profits from either type of gambling.[2] But running the cockfighting ring and charging fees for admission and for concessions undoubtedly created economic benefits for Defendant, and it was reasonable for a jury to draw the inference that by knowingly allowing gambling to take place in the 440 pit, Defendant had more roosters competing and more spectators, and therefore more revenue, than he otherwise would have had. Obviously, more competitors and spectators generate more revenue from entrance fees, to the ring and to the competition. In a case interpreting this same provision of Tennessee law, this Court found that lawfully leasing video poker machines knowing that those machines would be used for illegal gambling constituted deriving an economic benefit from the gambling even though there was no evidence presented that the defendants in that case directly received profits from the gambling. *United States v. Wall*, 92 F.3d 1444, 1452-53 (6th Cir. 1996).

This case is quite similar to *Wall* in that Defendant provided the means for gambling to take place by running the cockfighting pit but did not specifically make a profit from the gambling itself. In fact, in this case, Defendant's economic benefit is arguably more tied to the gambling taking place than in *Wall* because more gamblers coming to the cockfights directly leads to more entrance and fight entry fees collected by Defendant while more people using the video poker machines did not directly redound to the benefit of the defendants in *Wall*.

The district court did not create a manifest miscarriage of justice by denying Defendant's motion for judgment of acquittal. There was significant evidence in the record that Defendant derived economic benefits from the fact that he knowingly

---

[2]Defendant's argument, while presented as an argument about the factual evidence, primarily constitutes a legal argument concerning whether the revenue he obtained from his cockfighting ring constitutes an economic benefit from gambling as contemplated by the gambling promotion statute.

allowed and encouraged gambling to take place at his establishment; therefore, the record was not devoid of evidence of his guilt under 18 U.S.C. § 1955.  Consequently, a reasonable juror could find Defendant guilty of Count 1 due to his activities in running the cockfighting pit.

## CONCLUSION

For the reasons set forth above, we **AFFIRM** the district court's order denying Defendant's motion for judgment of acquittal.