**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 12a0168n.06

**Nos. 10-1413, 10-1415**

# UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | **FILED** |
| | ) | **Feb 13, 2012** |
| Plaintiff-Appellee, | ) | LEONARD GREEN, Clerk |
| | ) | |
| v. | ) | ON APPEAL FROM THE |
| | ) | UNITED STATES DISTRICT |
| DANIEL VANDERZWAAG and | ) | COURT FOR THE WESTERN |
| PATRICIA VANDERZWAAG, | ) | DISTRICT OF MICHIGAN |
| | ) | |
| Defendant-Appellants. | ) | |

Before: BOGGS and WHITE, Circuit Judges; and BERTELSMAN, District Judge.[*]

BOGGS, Circuit Judge. Daniel and Patricia VanderZwaag, husband and wife, obtained two mortgages on the same piece of property, 2121 Oak Hollow Drive in Jenison, Michigan. For the first mortgage of $175,000, obtained from Accredited Home Finance, Daniel supplied false information about his employment history and earnings. For the second mortgage of $137,250, obtained from Option One, Daniel supplied false information about his employment history and earnings, and failed to disclose to the lender that the same property had already been pledged as collateral to the first mortgage. These two acts served as the basis for counts 1 and 2 of the second superseding indictment. Count 1 alleged a violation of the mail-fraud statute, 18 U.S.C. § 1341. Count 2 alleged

---

[*]The Honorable William O. Bertelsman, United States District Judge for the Eastern District of Kentucky, sitting by designation.

a violation of the wire-fraud statute, 18 U.S.C. §§ 1343. Both counts also alleged a violation of the aiding-and-abetting statute, 18 U.S.C. § 2.

The government alleges that Patricia transferred part of the loan proceeds from the Option One mortgage from one of her bank accounts to another. The government charged in count 3 of the indictment that this act violated the money-laundering statute, 18 U.S.C. § 1957. The government further alleges that Patricia applied for a mortgage from National City Bank on another property, 4233 Creek View Drive in Hudsonville, Michigan, and supplied a false social security number and false earning and income statements. For this, the government brought count 4 of the indictment, alleging a violation of the bank-fraud statute, 18 U.S.C. § 1344(1).

Daniel and Patricia, who are represented by the same attorney on appeal—and were represented by the same attorney during trial, though the transcript of the proceeding where any conflicts of interest were waived seems to be curiously absent from the record[1]—collectively raise five issues on appeal. First, Daniel and Patricia each contend that the convictions on counts 1 and 2 should be reversed because the indictment and jury instructions improperly stated that each defendant could be found guilty both as a principal and as an aider and abettor. Second, Daniel and Patricia contend that there was insufficient evidence to convict them on counts 1 and 2. Third, Patricia contends that there was insufficient evidence to convict her on count 3. Fourth, Patricia

---

[1] Defendants characterize the missing transcript in this manner: "While Defendant VanderZwaag has ordered every transcript in this matter, he has yet to be provided the transcript for this arraignment where the parties allegedly waived their various conflicts of interest involving defense attorney Charles Rominger. Further, there are some financial difficulties in paying for the preparation of the transcripts. However, Defendant-Appellant, through family and friends, is attempting to obtain the transcript from this hearing so that it can be available for this court's review." *Appellant Daniel Br.* at 7 n. 1. Further it seems the trial attorney was under investigation for tax fraud by the government at the time of his representation. *Id.* at 16.

contends that there was insufficient evidence to convict her on count 4. Fifth, Patricia alleges that the sentencing guidelines were improperly calculated, the loss was improperly calculated, her criminal history level over-stated her past crimes, the district court gave undue weight to the guidelines, and the district court failed to consider the factors set forth in 18 U.S.C. § 3553(a). We affirm the opinion of the lower court on all issues.

**I**

Both Daniel and Patricia challenge the indictment and the jury instruction stating that each could be found guilty as both a principal and as an aider and abettor. Daniel asserts that he could only be found guilty as a principal, and not an aider and abettor. Because he "applied for the loans," Daniel argues, "he could not be found guilty as an aider and abettor." *Appellant Daniel Br.* at 18. Conversely, Patricia asserts that she could only be found guilty as an aider and abettor, and not as a principal: "Daniel VanderZwaag was the only person who had a legal duty to provide accurate and truthful information to the companies issuing the mortgages in those two counts." *Appellant Patricia Br.* at 21. In effect, both defendants concede they committed crimes in one of the roles alleged in counts 1 and 2—Daniel as a principal, and Patricia as an aider and abettor—but argue that, due to the conjunctive, rather than disjunctive, nature of the indictment, jury instructions, and verdict form, the convictions must be reversed.

Patricia further argues that because she had no legal relationship with either of the lenders, she had no legal duty to provide accurate information, and thus could not be found "guilty of fraud either as an aider and abettor or as a principal." *Appellant Patricia Br.* at 26. Patricia also contends that "[g]iven that she did not apply for either the Accredited or Option One loans, any 'fraud' she

committed must be as an aider and abettor." *Id.* at 29. These two preceding statements seem to be contradictory. Finally, Patricia argues that "the Indictment, Jury Instructions, and Verdict Form were insufficiently specific as to the theory of criminal liability, creating the possibility she was found guilty of the offense as a principal or that the verdict was not unanimous on the theory of criminal liability." *Id.* at 26 .

With respect to Daniel's appeal, the government counters that "there was evidence in the record supporting the defendant's guilt under both theories, as there was proof that he did not personally provide the false information submitted in connection with the loans." *Appellee Daniel Br.* at 13. Further, the district court's failure to require "the jury to return a special verdict indicating the theory of culpability it relied on to convict the defendant" did not constitute plain error. *Ibid.* With respect to Patricia's appeal, the government contends that "an aiding and abetting theory is always available to the prosecution, whether or not it is explicitly stated in the charges." *Appellee Patricia Br.* at 20. And, as with Daniel, "there was no need to ask the jury . . . to specify what theory it based its guilty verdicts upon." *Ibid.*

## II

Trial counsel made no objection to the indictment or the jury instructions. Because these alleged errors were not preserved at trial, plain error analysis applies.[2] In such situations, this court has held that a defendant's conviction must be upheld unless "the record is devoid of evidence pointing to

---

[2] Daniel mentions almost in passing that his 6th Amendment right to effective assistance of counsel was violated, *Appellant Daniel Br.* at 17, and that this ineffective assistance may have resulted in the failure to preserve issues on appeal. *Id.* At 19. The government does not address this issue, which does not seem to be relevant, or properly before the court.

guilt." *United States v. Frazier*, 595 F.3d 304, 306 (6th Cir. 2010) (citing *United States v. Mack*, 159 F.3d 208, 216 (6th Cir. 1998)). We review a challenge to jury instructions "as a whole to determine whether they fairly and accurately inform the jury of relevant considerations and explain the applicable law." *United States v. Prince*, 214 F.3d 740, 760-61 (6th Cir. 2000).

### III

In short, defendants argue that the indictment, jury instructions, and verdict form were improper because they did not specify upon which theory of liability each could be convicted. Count one of the Second Superseding Indictment, labeled "Mail Fraud," charges Patricia and Daniel with each violating both 18 U.S.C. § 1341 and 18 U.S.C. § 2. Likewise, count two of the Second Superseding Indictment, labeled "Wire Fraud," charges Patricia and Daniel with each violating both 18 U.S.C. § 1343 and 18 U.S.C. § 2. The verdict form for Counts 1 and 2 of the indictment reads as follows:

1. As to Count 1, charging defendants with mail fraud, we find the defendants:

    A. Patricia VanderZwaag    \_\_\_\_ Not Guilty     _____ Guilty

    B. Daniel VanderZwaag    \_\_\_\_ Not Guilty     _____ Guilty

2. As to Count 2, charging defendants with wire fraud, we find the defendants:

    A. Patricia VanderZwaag    \_\_\_\_ Not Guilty     _____ Guilty

    B. Daniel VanderZwaag    \_\_\_\_ Not Guilty     _____ Guilty

The court gave the jury the following instruction with respect to the aiding and abetting offense:

> For you to find the defendants guilty of each of the crimes charged in Counts One and Two of the Superseding Indictment, it is not necessary for you to find that he or she personally committed the crime. You may also find him or her guilty if he or she intentionally helped someone else to commit the crime. A person who does this is called an aider and abettor. But for you to find the defendants guilty as an aider and abettor, you must be convinced that the government has proved each and every one of the following elements beyond a reasonable doubt: First, that the particular crime charged was committed. Second, that the defendant helped to commit the crime. And third, the defendant intended to help commit the crime. Proof that the defendant may have known about the crime, even if he or she was there when it was committed, is not enough for you to find him or her guilty. You can consider this in deciding whether the government has proved that he or she was an aider and abettor, but without more, it is not enough. What the government must prove is that the defendant did something to help the crime with the intent that the crime was-- that the crime be committed. If you are convinced the government has proved all of these elements, say so by returning a guilty verdict on this charge. If you have a reasonable doubt about any one of these elements, then you cannot find the defendant guilty as an aider and abettor.

As a logical matter, defendants make a fair point—how can one person be both a principal, and at the same time an aider and abettor? However, this hypothesis is not supported by the case law: the government is not required to choose one theory, and stick with it. "[T]he fact that the government charges violation of a statute by both principal liability and liability for aiding and abetting does not render an indictment duplicitous." *United States v. Banks*, 27 F. App'x 354, 359 (6th Cir. 2001); *United States v. Dean*, 969 F.2d 187, 195 (6th Cir.1992) (same). This court has held that a single defendant "may be indicted for the commission of a substantive crime as a principal offender and convicted of aiding and abetting its commission although not named in the indictment as an aider and abettor without violating federal due process." *Hill v. Perini*, 788 F.2d 406, 407 (6th Cir. 1986). In *United States v. Hopper*, this court upheld a conviction where two defendants "were charged both as principals under §§ [18 U.S.C.] 111(a) and 924(c)(1)(A)(ii) and under 18 U.S.C. § 2

as aiders and abettors." 436 F. App'x 414, 421 (6th Cir. 2011). Even if the aider and abettor theory

is not charged, a defendant can still be found to violate 18 U.S.C. § 2. *See United States v. McGee*,

529 F.3d 691, 695 (6th Cir. 2008). The Sixth Circuit has interpreted aiding and abetting as a theory

of liability "embodied in every federal indictment, whether specifically charged or not," and not a

distinct substantive crime. *United States v. Floyd*, 46 F.App'x 835, 836 (6th Cir. 2002).

Defendants cite cases from other circuits for the proposition that for certain crimes, a person

cannot be found guilty as an aider and abettor. *See e.,g., United States v. Shear*, 962 F.2d 488 (5th

Cir. 1992); *United States v. Falletta*, 523 F.2d 1198 (5th Cir. 1975); *United States v. Southard*, 700

F.2d 1 (1st Cir. 1983). These cases are inapposite, and refer to specific statutes where courts have

carved out exceptions whereby a person cannot be found guilty as an aider and abettor. Defendants

even concede that "the cited cases do not directly address whether a person can be found guilty as

an aider and abettor when the principal defrauds a loan company"—precisely the question in this

case. *Appellant Patricia Br.* at 28-29.

The underlying offenses for Count 1 and Count 2, 18 U.S.C. §§ 1341 and 1343—contrary

to defendant's protestations—are not "limited to a certain category of Defendant," and thus the "the

law does . . . allow liability to attach under an aiding and abetting theory." *Id.* at 29. The statutes

speak generally and broadly—both § 1341 and § 1343 begin with "Whoever, having devised or

intending to devise any scheme or artifice to defraud, or for obtaining money or property by

means . . . ." Neither mentions specific roles in the offense, such as principals, aiders, or abettors.

Because Congress did not "specify[] the kind of individual who is to be found guilty," we cannot

infer that Congress intended to exclude those acting in other roles—such as aiders and

abettors—from being found guilty. *United States v. Southard*, 700 F.2d 1, 19-20 (1st Cir. 1983). *Cf. United States v. Amen*, 831 F.2d 373, 381-82 (2d Cir. 1987) ("[w]hen Congress assigns guilt to only one type of participant in a transaction, it intends to leave the other unpunished for the offense").

Additionally, there is no requirement that the jury receive a special verdict form unless the charge is complex or there is a fear of jury confusion. *United States v. Algee*, 599 F.3d 506, 514 (6th Cir. 2010). This court has specifically held that district courts are "not required to give a special 'unanimity instruction'" for aiding and abetting charges. *United States v. Holt*, 108 F. App'x 325, 327 (6th Cir. 2004).

Here, Daniel and Patricia were both put on notice that the government was pursuing an aiding-and-abetting theory by the inclusion of 18 U.S.C. § 2 in Counts 1 and 2 of the indictment, and by the request for an aiding-and-abetting jury instruction. While Daniel concedes liability as a principal but disputes liability as an aider or abettor, his subjective understanding of his role in the offense is largely irrelevant. The government can choose to indict him under both roles, and request instructions for both roles. Likewise, even though Patricia asserts that she could not have been a principal in the offense, it is not duplicative to indict the same person in two different roles.

While it is impossible to determine whether the jury convicted Daniel or Patricia or either as a principal or as an aider or abettor, or both—and the district court may have been warranted in issuing such a verdict form if trial counsel had so requested—there is no requirement that the district court provide the jury with a special verdict form for an aiding and abetting charge. This omission can only constitute plain error where "the record is devoid of evidence pointing to guilt." *United*

*States v. Frazier*, 595 F.3d 304, 306 (6th Cir. 2010) (citing *United States v. Mack*, 159 F.3d 208, 216 (6th Cir. 1998)). This is not the case, as an ample factual record exists to provide the jury with grounds to find guilt. Defendants fail to allege any procedural-due-process or other constitutional violations. The indictment, jury instructions, and verdict form were appropriate as to counts 1 and 2 for Daniel and Patricia.

**IV**

Both Daniel and Patricia contend that there was insufficient evidence to convict them on counts 1 and 2. Daniel argues that the material statements that he made about his earnings to the loan companies were truthful, and that no contrary evidence was presented as to Count 1 and 2. Specifically, he claims the loans in question were "stated" loans, such that only a person's actual credit history is relevant to the approval of the loan—not the (false) information provided on the application. Effectively, whatever income Daniel reported to the mortgage company—whether true or false—was not relevant to the approval of the loan. Thus, Daniel argues that his statements could not be considered material.

Patricia's argument regarding the sufficiency of counts 1 and 2 blurs somewhat with her earlier argument about her conviction as a principal and an aider or abettor. Patricia contends that there was sufficient evidence to justify a conviction as an aider or abettor, but insufficient evidence to support a conviction as a principal. As discussed earlier, the failure to supply the jury with a special verdict form—the only means by which the court could have determined on which theory of liability Patricia was convicted on counts 1 and 2—was not error. Next, the sufficiency of the

evidence is considered to determine whether any rational trier of fact could find the elements of the crime proven beyond a reasonable doubt, under either theory.

Specifically, Patricia argues that "[g]iven that she did not apply for either the Accredited or Option One loans, any 'fraud' she committed must be as an aider and abettor." *Appellant Br. Patricia* at 33. "[B]ecause Daniel VanderZwaag, and only Daniel VanderZwaag, applied for the loans, only he had any duty to provide accurate and truthful information to the lenders." *Appellant Br. Patricia* at 29. Further, neither lender had the "right to rely on any information provided by an outside person not part of the contractual loan information"—namely Patricia. *Id.* at 30. As a matter of law, she argues, only Daniel could be found guilty. Additionally, Patricia argues that as "a principal, none of her 'acts' or 'statements' could have a natural tendency to influence a person of ordinary prudence or comprehension, because she had no obligation to provide any information, truthful or otherwise, to the loan companies. If the loan officers chose to listen to her, as an outsider to the contractual relationship, that decision was foolish and certainly not reasonable." *Appellant Br. Patricia* at 34. Patricia also concurs with her co-defendant that Daniel's "material statements were not fraudulent and, he, as principal, did not commit the substantive offense." *Id*. at 35.

The government contends that it proved Daniel, either as a principal or as an aider and abettor, made material false statements in connection with the loans. The government proved materiality through testimony showing that "wage and employment information is always important to lenders," that "the information was required by lenders and could affect the outcome of the loan decision," and that "borrower's employment information influences the lending decision because it

bears on the borrower's ability to repay the loan." *Appellee Br. Daniel* [United States's Appellee brief to Daniel's Appellant brief] at 20-21.

With respect to Patricia, the government argues that "record here shows that she was deeply involved in the fraudulent scheme, and took the lead in supplying false information on loans obtained by Daniel VanderZwaag." *Appellee Br. Patricia* at 25. Specifically, the government introduced testimony that Patricia "was the one who first contacted the mortgage broker who handled the Accredited mortgage," served "as the person who kept in contact with him during the loan process," and "presented false employment verifications." *Id.* at 25-26. The government asserts that the "jury was entitled to conclude that she intended to take these actions to assist the fraud because the money obtained from Accredited paid off a debt she owed, and she used the Option One funds to pay other bills." *Ibid.*

Trial counsel never made a motion for a judgment of acquittal under Federal Rule of Criminal Procedure 29. In such cases, a conviction must be upheld unless "the record is devoid of evidence pointing to guilt." *United States v. Frazier*, 595 F.3d 304, 306 (6th Cir. 2010) (citing *United States v. Mack*, 159 F.3d 208, 216 (6th Cir. 1998)). Under this standard, defendants do not prevail. The government put forth sufficient evidence to show that Daniel's false statements would be capable of affecting the outcome of the loan decision, even if the loan decision was based purely on Daniel's credit score. *See, e.g., United States v. Daniel*, 329 F.3d 480, 486 (6th Cir. 2003) (holding actual reliance is not required to satisfy the materiality requirement). *See also United States v. McAuliffe*, 490 F.3d 526, 531 (6th Cir. 2007) (citations omitted). With respect to Patricia, there was more than enough testimony adduced at trial to permit a rational finder of fact to determine that

she was guilty. Her actions in presenting false information and procuring the loan are sufficient to meet all of the elements of the crime. Even with some conflicts of testimony between the government witnesses, and the defendants' witnesses it cannot be said that "the record is devoid of evidence pointing to guilt." *Frazier*, 595 F.3d 304, 306 (6th Cir. 2010) (citing *Mack*, 159 F.3d at 216). There was sufficient evidence to support the convictions of Daniel and Patricia on counts 1 and 2.

**V**

Patricia further contends that there was insufficient evidence to support a conviction on count 3 of the indictment, the money-laundering charge. As discussed above, because trial counsel never moved under Federal Rule of Criminal Procedure 29 for a judgment of acquittal, the conviction must be upheld unless "the record is devoid of evidence pointing to guilt." *Frazier*, 595 F.3d at 306. Patricia's argument for count 3 is premised on our resolution of her sufficiency argument for count 2—"[i]f this Honorable Court finds that there was insufficient evidence to convict Daniel VanderZwaag and/or Patricia VanderZwaag of the accusations in Count 2, then Defendant-Appellant's conviction on Count 3 must be reversed." *Appellant Br. Patricia* at 36.

By her own admission, if we reject her argument on count 2, her argument for count 3 falls. As previously discussed, there was sufficient evidence to justify the conviction of Count 2. This argument, by Patricia's own concession, must fail. Notwithstanding this concession, as the government notes, Patricia "played an active, intentional role in supplying false information to Option One," "provided the mortgage broker with false earnings information related to Daniel," and falsely indicated that the property had no liens on it. *Appellee Br. Patricia* at 30. In any event, these

fraudulent statements contributed to the loan awarded from Option One bank. Patricia subsequently wired this money from one bank account into another. This evidence at trial is sufficient to support a conviction for money laundering.

## VI

Next, Patricia challenges the sufficiency of the evidence for count 4 of her indictment, the bank-fraud conviction. Patricia argues that any false statements she made to National City Bank to obtain a loan—including providing a false social security number —were not material. *Appellee Br. Patricia* at 37. Further, there was "insufficient evidence on whether she intended to defraud National City." *Ibid.* Defendant's concession—that she knowingly provided a false social security number—seems to undercut her sufficiency argument. She knowingly and intentionally gave a false social security number to a bank to obtain a mortgage. Witnesses during trial from National City Bank testified that the social security number was important to the loan decision, and would impact the decision to grant her the loan. Providing a false social security number is patently material. Certainly a rational juror could find that the record has at least some evidence pointing to guilt. Because this error was not preserved, and is reviewed under a deferential standard, this clam fails.

## VII

With respect to sentencing, Patricia raises a host of issues: her guidelines were not correctly calculated, the amount of loss was not properly calculated, her criminal history over-stated the seriousness of her criminal past, the court gave undue deference to the guidelines, and the court failed to consider the factors provided in 18 U.S.C. § 3553(a). When reviewing the reasonableness

of sentences, this court employs an abuse-of-discretion standard. *United States v. Moon*, 513 F.3d

527, 539-40 (6th Cir. 2008).

**A**

Patricia finds fault in the district court's calculation of the amount of loss under USSG

§ 2B1.1 at approximately $231,000. During sentencing, the district court made the following

somewhat-complicated calculation of losses (with explanatory calculations italicized in brackets):

> As it relates to calculation of loss, the Court believes that the government has sustained its burden to show a loss of $231,000 or $232,000 and in the manner in which the Court calculates that is as follows: **$25,500** approximately to Merrill Lynch *[representing the shortfall Merrill Lynch, the first lien holder experienced on the first mortgage Daniel obtained from Accredited Home Finance on 2121 Oak Hollow Drive]*, **$35,000** to Citi Group *[representing the shortfall Citi Group—the second lien holder on 2121 Oak Hollow Drive— experienced; the note was never released]*. **$137,162** to Option One *[the second mortgage that Daniel took on 2121 Oak Hollow Drive]*. And the National City Bank loan *[for the mortgage Patricia took on the property at 4233 Creek View Drive]* is the one that is most perplexing to the Court to try to come to some appropriate loss figure for that particular loan. The government's suggestion that I depreciate the appraisal by 15 percent, the Court will accept that as an accurate appraisal of the house based on the testimony. We are in the State of Michigan. The State of Michigan is at the bottom of the economic wrung [*sic*] in the country on most measurement, and certainly real estate has taken a significant hit across the state, including communities such as Hudsonville. So I think a 15 percent depreciation is appropriate from the appraisal of **$240,000** [*the assessed price at the time National City Bank made the loan was $240,000; the depreciated price of the house at the time of sentencing was $204,000 (240,000 – (240,000 * 0.15))*]. At the time that the loan was made [*in 2007*], the loan amount is $237,500, resulting in a loss of **$33,500** if the house was sold at the time [*that is the difference between $237,500 (the price of the loan in 2007) and $204,000 (the depreciated price of the house in 2009); in other words, the property lost $33,500 in value*]—at the adjusted appraised value, of course, sales are made by willing buyers and willing sellers, and the fact that the house is still in foreclosure and apparently has not been sold, makes it difficult, but I think the government's suggestion and the government's proofs are satisfactory. As far as the Citi Group loan is concerned [*$35,000*], what was originally from Accredited [*Home Finance*], there has been no

release of lien. Accordingly, the Court concludes, based on the inferences and the testimony, as well as the proofs at trial, that the appropriate amount to apply there is **$35,000**. So the loss is calculated, as I've said, will be set at **$231,000** [*the court arrived at this number by adding $25,500 from the Merrill Lynch lien, $35,000 from the Citi Group lien, $137,162 from the Option One mortgage, and $33,500 representing the loss due to depreciation from the mortgage from National City Bank, totaling $231,162*] or **$232,000** that really doesn't—that $1,000 doesn't make a difference because the cut is at $200,000 and $400,000, so the Court will apply twelve levels at Paragraph 24 resulting in, and then—right, twelve levels at Paragraph 24. Sent. Tr. 56-57 (emphasis added).

Patricia disputes a total of $68,490.20 from the total amount of $231,162 the district court calculated: "worse [*sic*] case scenario, summarizing the 'actual loss' suffered or giving credit for 'credits against loss,' the banks/mortgage lenders have suffered losses in the amounts of $137,162.30 (Lawyers Title Insurance) plus $25,510.50 (Merrill Lynch) on the Oak Hollow Drive property, totaling $162,672.80" (231,162-162,672.80=68,489.20) *Appellant Br. Patricia* at 40. It is unclear if Patricia includes this "worst case scenario" as a hypothetical, or as a calculation that can constitute a waiver.

Patricia does not specifically break down this $68,490.20, but we presume that she disputes the $35,000 from the Citi Group lien, and the $33,500 from the loss due to depreciation from the National City Bank mortgage on the Creek View Drive property—they total $68,500, close enough to $68,490.20. It is not clear from her brief why Patricia disputes the inclusion of Citi Group's lien for $35,000. *Ibid.* With respect to the $33,500 discounted due to depreciation of the Creek View Drive property, Patricia makes two related arguments—one empirical, one legal. First, she asserts that the government failed to meet its burden of proof about the present-day value of the property.

Patricia would impose on the government the burden of obtaining an appraisal of the Creek View Drive property.

Over protest from defense counsel, Sent. Tr. 31, 33, the court relied on a 2009 GRAND RAPIDS PRESS article that illustrated the depreciation rates of Michigan real estate. *Id*. at 57. While the court did not take judicial notice of the article, a district court is responsible for making a "reasonable estimate of the loss." *United States v. Parish*, 565 F.3d 528, 534-35 (8th Cir. 2009). Reasonableness does not require exact computation. Further, there is no obligation imposed by the case law for the government to obtain an independent appraisal of the property—the approach Patricia requested—in order to calculate the value of a property. For purposes of sentencing, in the absence of a recent appraisal, reliance on the article was a reasonable means to calculate the present value.

Second, Patricia asserts that the loss from the National City Bank loan secured by an interest in the Creek View Drive property should be calculated based on "actual" loss, rather than the intended loss. *Appellant Br. Patricia* at 39. The sentencing court, she argues, should have given credit for the amount of secured interest that the bank had against the value of the loan. "Since that property has not yet been sold, there is a valid legal mortgage against the Creek View Drive property and therefore there cannot be an 'intended' loss." *Id.* at 41. Finally, Patricia contends that she should be "entitled to a 'credit' based on the value of the home." *Ibid.*

Patricia cites several cases in this circuit that reflect an older version of USSG § 2B1.1, previously designated as § 2F1.1 (the two sections were consolidated in 2001) to support an "actual" loss method of calculation—where a bank loan is secured by an interest in real property, any loss

calculation should be based on "actual" loss. *See United States v. Lavoie,* 19 F.3d 1102, 1105 (6th Cir. 1994) ("This Court has explicitly recognized that the loss calculation of USSG. § 2F1.1(b) in cases of fraudulently induced bank loans should be based on the 'actual' or 'expected' loss rather than on the face value of the total amount of the loan proceeds."); *United States v. Chichy,* 1 F.3d 1501 (6th Cir. 1993); and *United States v. Moored*, 38 F.3d 1419 (6th Cir. 1994).

The government prefers the approach of the Eighth Circuit that interprets the current USSG § 2B1.1. "As recognized by the Guidelines, the damage wrought by fraud is sometimes difficult to calculate." *United States v. Parish*, 565 F.3d 528, 534 (8th Cir. 2009) (quoting *United States v. Agboola*, 417 F.3d 860, 870 (8th Cir. 2005)). The *Parish* court held that a district court is responsible making a "reasonable estimate of the loss," and approved of the district court's method of measuring loss by starting with the amount loaned as a result of the fraud, reduced by the value of the collateral pledged. *Parish*, 565 F.3d at 534-535. The government does not cite any cases from this circuit to the contrary.

Comment 3(a) to USSG § 2B1.1 provides that "loss is the greater of actual or intended loss." When a district court is not able to calculate the loss, the commentary to the guidelines permit the court to base the punishment on the defendant's gain. USSG § 2B1.1 n.3(B). Where the fraud occurs in connection with collateral pledged for a mortgage, the defendant is entitled to a reduction in the loss amount as a result of the sale of the collateral, or the fair market value at the time of sentencing. USSG § 2B1.1 n.3(E)(ii).

The district court calculated the actual loss, rather than the intended loss. Patricia's reliance on *Lavoie* and its progeny—which support the district court's decision—to argue to the contrary is

misplaced. By depreciating the price of the property, the court made a "reasonable estimate," *Parish*, at 534, of the *actual loss* of the property value between 2007 and 2009. This is not an intended, or expected loss calculation, as Patricia claims. To arrive at the actual loss the district court considered lengthy sentencing memoranda, and held an evidentiary hearing. In any event, it cannot be said that the court clearly erred.

**B**

Patricia objects to a two-level enhancement under USSG § 3C1.1 for obstruction of justice. First, she argues that she did not make any statements during trial. This argument is unavailing, as the enhancement permits consideration of conduct that occurred outside of trial. Alternatively, she contends that any "alleged false statements [made during the original interview with Special Agent Gilligan] were neither material nor did they seriously impede or obstruct the investigation in this case." *Appellant Br. Patricia* at 47. During the sentencing hearing, Special Agent Gilligan testified at length that Patricia made false statements to her—Patricia told her that the Social Security Administration issued her a new social security number because of identity theft. This never happened. The false information led Gilligan on a wild-goose chase, as she spent time and resources investigating the supposed issuance of a social security number that did not exist. The district court accepted Gilligan's testimony. Patricia provides no plausible reason why this finding of fact—the basis of the enhancement—was clearly erroneous.

**C**

Beyond the loss calculation and obstruction enhancement, Patricia asserts an amalgam of sentencing challenges that blend together. She faults the district court's decision not to vary from

the guideline ranges due to policy considerations, citing the steep increase in the base offense level for fraud cases over the last twenty years. *Appellant Patricia Br.* at 42. Patricia objects to the fact that "any loss in excess of $30,000.00. . . . call[s] for a prison term (Zone D)." *Id.* at 46. She claims that the court's sentence did not meet the goals of 18 U.S.C. § 3553(a)(2). *Ibid.* Patricia also argues that her criminal history was overstated, *id.* at 48, and contends that the court should have varied from the Guidelines range because "only one victim suffered a substantial loss in excess of $137,000.00." *Id.* at 50. Each of these arguments is unavailing.

The district court, citing its authority under *Kimbrough v. United* States, 552 U.S. 85 (2007), made clear that it recognized that it had the ability to disregard the guidelines; yet, it chose not to exercise that discretion. A sentence is not unreasonable merely because the district court declines to vary on policy grounds. *United States v. Guest*, 564 F.3d 777, 780 (6th Cir. 2009); *United States v. Ultsch*, 578 F.3d 827, 830-31 (8th Cir. 2009) ("While the district court may have been free to vary from the guideline based on policy concerns, the Supreme Court's recent decisions 'do not hold that a district court must disagree with any sentencing guideline, whether it reflects a policy judgment of Congress or the Commission's 'characteristic' empirical approach.'") (quoting *United States v. Barron*, 557 F.3d 866, 871 (8th Cir. 2009)).

Likewise, the district court considered Patricia's argument to reduce the criminal history category, but rejected it in light of the fact that a number of her convictions—which were related to fraud and theft—were not counted. The district court noted that it was "dumb struck" by the great number of prior convictions, all for theft and fraud offenses. Sent. Tr. at 74. Finally, the failure to

vary downward was not error, as the court fully explored the 3553(a) factors during the lengthy

colloquy.

## VIII

The judgments and sentences of the district court are AFFIRMED.