**NOT RECOMMENDED FOR PUBLICATION**
File Name: 10a0219n.06

**Nos. 07-6126, 09-5636**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR |
| | ) | THE WESTERN DISTRICT OF |
| CARLOS LEON LOGAN, | ) | KENTUCKY |
| | ) | |
| Defendant-Appellant. | ) | |

**FILED**
**Apr 08, 2010**
LEONARD GREEN, Clerk

Before: SILER and ROGERS, Circuit Judges; BELL, District Judge.[*]

**SILER**, Circuit Judge. Carlos Leon Logan appeals his convictions for drug-related crimes. He argues that the evidence was insufficient to support his conviction for drug conspiracy; the jury instructions were erroneous; some of the evidence admitted against him was prejudicial; a chain of custody was not properly established; the district court improperly prevented him from presenting a defense; and the absence of African Americans from the venire violated the Equal Protection and Due Process Clauses of the U.S. Constitution. He separately appeals the district court's denial of his motion for a new trial based on newly discovered evidence. We consolidated these cases for appeal.

For the following reasons, we **AFFIRM** in part but **REVERSE** and **REMAND** for re-sentencing.

---

[*]The Honorable Robert Holmes Bell, United States District Judge for the Western District of Michigan, sitting by designation.

## I. FACTUAL AND PROCEDURAL BACKGROUND

A grand jury indicted Carlos Logan and Antonio Jamaal Mitchell in 2007 for eleven counts of drug-related offenses.[1] Mitchell pled guilty to count six, the remaining charges against him were dismissed, and he was placed on probation for four years. Logan, however, proceeded to trial and was convicted. He was sentenced to fifteen years' imprisonment followed by a five-year supervised-release term. After filing his direct appeal, Logan also filed a motion for a new trial based on newly discovered evidence, which the district court denied.

### A. The Controlled Buys

Pursuant to a drug trafficking investigation, the Warrick County, Indiana Sheriff's Department executed a controlled buy between Charlie Gamble, the putative buyer and a police informant, and Eric Rice and Kenneth Yancy, the sellers, on February 3, 2005. Rice and Yancy were arrested after the buy. When interviewed, Yancy stated that earlier that day he and Rice had accompanied Germaine White, a convicted drug dealer, to Logan's Madisonville, Kentucky

---

[1]The indictment charged the following counts: Logan, Mitchell, and others conspired to possess with intent to distribute fifty grams or more of crack cocaine, cocaine, and marijuana, in violation of 21 U.S.C. §§ 846 and 841(b)(1)(A)(iii) (count one); Logan knowingly and intentionally possessed with intent to distribute five grams or more of crack cocaine, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B)(iii) (counts two and three); Logan and Mitchell aided and abetted each other by knowingly and intentionally possessing crack cocaine, cocaine, and marijuana with intent to distribute (counts four, five, and six); Mitchell knowingly and intentionally possessed more than five grams of crack cocaine (count seven); Logan and Mitchell aided and abetted each other by knowingly using and maintaining a residence for the purpose of distributing and using cocaine, in violation of 21 U.S.C. § 856(a)(1) (count eight); Logan possessed a firearm in furtherance of the drug trafficking crimes alleged in counts one through five and in violation of 18 U.S.C. § 924(c)(1)(A)(I) (count nine); and forfeiture counts regarding the firearm, ammunition, and the proceeds and property relating the charged drug crimes (counts ten and eleven). Count two was dismissed prior to trial.

residence, where White purchased a half-ounce of cocaine from Logan. According to Yancy, White gave the cocaine to Rice and Yancy and instructed them to deliver it to Gamble in Indiana and to collect payment on his behalf. This information was passed on to the Madisonville police.

Under police surveillance, Yancy bought crack cocaine from Logan at his residence on February 9, 2005. Yancy exited the house after the transaction was complete and relinquished the drugs to Detective Lantrip, who later processed the evidence before placing it in the evidence room run by evidence technician Brian McKinney.[2]

Officers executed a search warrant at the residence. They seized powder cocaine; crack cocaine, including a "crack cookie"; several pounds of marijuana in plastic garbage bags; marijuana seeds; several sets of digital scales; $5139 in cash; plastic bags; and a Beretta handgun. The officers took pictures of the evidence at the crime scene, and McKinney and Officer Robert Carter brought the evidence back to the police department. The officers and McKinney photographed and processed the evidence, after which it was stored it in the evidence room. Five days after the raid, McKinney delivered the drug evidence to the KSP laboratory for testing.

After federal officials decided to prosecute the case, ATF Agent Jay Espinola took custody of the physical evidence from McKinney at the evidence room on February 13, 2005. McKinney transferred all the requested evidence on that date to Espinola, except for a portion of money

---

[2]According to trial testimony, McKinney photographed the evidence in the presence of Lantrip. McKinney wrote the case number, suspect's name, time, and date on the evidence bag, placed the evidence in it, and sealed it. The sealed bag was housed in the evidence room in a locker until it was transferred to the laboratory for chemical analysis, or, as also occurred in this case, to federal officials in connection with a federal criminal prosecution.

($3000), a fact Espinola only noticed later. He returned to the evidence room and recovered this sum. Subsequently, when comparing the bills in his possession with photographs of bills at the crime scene, he discovered that the serial numbers on the bills did not all match. However, he maintained that he eventually "received the right amount." In addition, he stated that the gun's serial number—unique to each—matched the serial number of the gun photographed at the crime scene.

## B. Trial

The trial court admitted the physical evidence, but allowed the defense to introduce evidence that McKinney had mishandled the money and that the evidence room was in "disarray." The court excluded evidence about the conduct of McKinney in other cases as irrelevant.

Espinola testified to support chain of custody. On cross-examination, he admitted that the evidence room was "disorganized," that "things that were not labeled," that McKinney was in charge of storing evidence, that McKinney misappropriated a portion of the money seized from Logan's home, and that McKinney was the subject of an "ongoing investigation."[3] In a sealed avowal examination outside the jury's hearing, Espinola stated that he was the lead investigator in a separate inquiry into McKinney "[for] mishandling . . . evidence [and for] selling guns." The defense proffered the audit report, which detailed McKinney's inability to provide "documentation, actual

---

[3]Specifically, McKinney was under investigation for selling guns. After Logan's conviction, McKinney pled guilty in federal court to stealing approximately 85 firearms, in violation of 18 U.S.C. § 924(1), between May 1, 2005, and January 18, 2007. *United States v. McKinney*, No. 4:08-CR-0009 (W.D. Ky. Aug. 26, 2008). McKinney's plea prompted Logan to move for a new trial, which we will discuss later.

evidence/guns/drugs/money on approximately [one-hundred] cases," but this report was not introduced into evidence.

## II. DISCUSSION

### A. Sufficiency of the Evidence

Logan first argues that the evidence was insufficient to convict him of the conspiracy count (count one). "To sustain a conviction for drug conspiracy under [§] 846, the government must prove beyond a reasonable doubt: (1) an agreement to violate drug laws; (2) knowledge of and intent to join the conspiracy; and (3) participation in the conspiracy." *United States v. Gardner*, 488 F.3d 700, 710 (6th Cir. 2007) (citation omitted).

Logan's main contention on appeal is that there was not sufficient evidence that "[he] and any other person" agreed to distribute drugs. He emphasizes that Yancy was acting as a government informant during the February 9 controlled buy and thus could not be party to a conspiracy, White engaged in only one isolated drug transaction with Logan, and there was not enough evidence from which the jury could infer that Logan and Mitchell conspired.

We must determine whether "a rational trier of fact could find that the defendant had knowledge of the conspiracy itself, and purposefully joined the conspiracy." *United States v. Caver,* 470 F.3d 220, 233 (6th Cir. 2006) (citations omitted). Logan correctly states that Yancy's status as a government informant prevents our conclusion that he and Yancy conspired, at least with respect to the February 9 buy. *United States v. Rogers*, 118 F.3d 466, 477 (6th Cir. 1997) ("[A] conspiracy cannot be proven by an agreement between a defendant and a government agent or informer."). Moreover, the February 3 buy between Logan and White cannot, without more, support an inference

that Logan and Yancy agreed together to sell drugs. Thus, we are left to examine the evidence supporting an agreement between Logan and either White or Mitchell. Yancy only testified as to one instance during which White bought drugs from Logan—the February 3 buy—and there is no additional circumstantial evidence to support an inference that Logan was part of a larger conspiracy. Although Yancy described a chain-distribution scheme by testifying that he observed White buy drugs from Logan, which White in turn instructed Yancy and Rice to distribute and then remit payment to White, there is no evidence that Logan "had knowledge of the conspiracy itself, and purposefully joined the conspiracy." *Caver*, 470 F.3d at 233. Finally, although Mitchell lived with Logan, was found with drug paraphernalia in his pockets, and police confiscated drugs from common areas of the house the two shared, we cannot infer an agreement between the two men from these facts.

On balance, the evidence in the instant case is considerably less than what we have held to be sufficient in other cases. *See, e.g.*, *United States v. Robinson*, 547 F.3d 632, 640-41 (6th Cir. 2008) (holding sufficient evidence supported § 846 conviction where witness testified that he and defendant shared a "business relationship" and defendant purchased drugs from witness once or twice a week, sometimes on credit, over a period of several years); *Caver*, 470 F.3d at 233-34 (same, where defendants pooled money to purchase drugs, cooperated to evade law enforcement, and engaged in "regular, high-volume drug sales"); *United States v. Henley*, 360 F.3d 509, 513-14 (6th Cir. 2004) (same, where co-conspirator testified that defendants "fronted" drugs to him and another co-conspirator testified that he provided defendants with "large" quantities of drugs). Because we find that the evidence was not sufficient to support an agreement, we need not inquire into the

second and third elements of a § 846 conviction. We reverse Logan's conviction for count one, vacate Logan's sentence, and remand to the district court for re-sentencing on the remaining counts.[4] Accordingly, Logan's argument that the conspiracy instruction was in error is moot.

**B. Drug-Related Violence Evidence**

Logan next objects to the introduction of police testimony regarding significant drug violence in Madisonville and the reference to Mitchell's "hit list" as irrelevant and prejudicial. We review the district court's evidentiary rulings for abuse of discretion. *Henley*, 360 F.3d at 518.

Over defense counsel's objections, the jury heard testimony that Madisonville has a significant drug-violence problem and that a document titled "A.J.'s Hit List" was found in Mitchell's bedroom. The district court allowed the former, finding it relevant to why Logan would have a gun and drugs worth thousands of dollars. It allowed the latter, because it was relevant to showing that the bedroom was Mitchell's.

The district court did not abuse its discretion. *See* Fed. R. Evid. 401. Brief testimony about drug violence in Madisonville was relevant to determining whether Logan was guilty of the § 924(c) charge. The "hit list" was relevant to show that the bedroom was Mitchell's, and to prove where the gun, drugs, and money were found.

Likewise, the district court did not abuse its discretion by overruling Logan's Federal Rule of Evidence 403 objection. Logan maintains that the evidence should have been excluded pursuant

---

[4]The imposition of a special assessment on each count prevents us from bypassing Logan's claims under the concurrent sentence doctrine. *Ray v. United States*, 481 U.S. 736, 737 (1987) (per curiam).

to Rule 403, because, taken together, it "steered the jury to making its decision 'on an improper basis,'" i.e., that Logan was a violent person who must have committed the crimes charged. The jury could not have reached such a conclusion given that the officer testified that violence in the area and, in particular, a shooting in Madisonville had nothing to do with Logan's case. With regard to the hit list, the officer testified that it was not a list of women Mitchell wanted to kill, but rather a list of his sexual conquests. Although the probative value of the "hit list" was arguably low, so was its undue prejudice as to Logan.

## C. Chain of Custody

Logan next appeals the admission of the crack that Yancy bought. We review the district court's admission of this evidence for abuse of discretion. *See United States v. Phillips*, 888 F.2d 38, 40 (6th Cir. 1989).

To admit physical evidence, the government must show "that the exhibit offered is in substantially the same condition as it was when the crime was committed." *United States v. Robinson*, 104 F.3d 361, at *2 (6th Cir. 1996) (table) (citing *United States v. Aviles*, 623 F.2d 1192, 1197 (7th Cir. 1980)). "Absent a clear abuse of discretion, 'challenges to the chain of custody go to the weight of the evidence, not its admissibility.'" *United States v. Allen*, 106 F.3d 695, 700 (6th Cir. 1997) (citation omitted). "[A] missing link does not prevent the admission of real evidence, so long as there is sufficient proof that the evidence is what it purports to be and has not been altered in any material aspect." *Robinson*, 104 F.3d at *2 (quoting *United States v. Howard-Arias*, 679 F.2d 363, 366 (4th Cir. 1982)). The government need not eliminate the possibility of misidentification

or alteration entirely, "but as a matter of reasonable probability." *Allen*, 106 F.3d at 700 (citations omitted).

The crux of Logan's argument is that because McKinney mishandled the funds and was under investigation for selling evidence guns for money, he necessarily tampered with the gun and drug evidence. Logan presents no evidence other than McKinney's subsequent federal prosecution for selling guns, the fact that the evidence room was in disarray, and Espinola's testimony regarding the mismatched serial numbers on the money. We have never held that evidence of the mishandling of one piece of evidence requires that separate pieces of evidence in the same case be necessarily excluded. The question is, instead, whether the government can meet its burden to prove chain of custody with respect to each piece of evidence.

Espinola testified that while he received the exact amount confiscated, at least some of the serial numbers were different. This evidence should have been excluded. Any error was harmless, however, because the jury heard Espinola's testimony that the bills were different, and because it also could have relied on the officers' testimony regarding the total cash recovered from the scene in reaching its verdict. The actual physical evidence, in other words, was not the only means by which the prosecution could show that money was found on the scene.

As to the gun and drug evidence, the government established to a reasonable probability that the evidence was not misidentified. We are troubled by the evidence in this case regarding McKinney's mishandling of the funds and his subsequent federal investigation and conviction for selling guns. Nonetheless, the issue is whether the district court abused its discretion in concluding that the remaining pieces of evidence had not been altered in any important respect within a

reasonable probability. The gun and the drug evidence were marked and sealed with Madisonville

evidence labels that contained the case name, date, and suspect. Several police officers testified that

they observed the evidence being photographed, collected, and packaged at the scene, and then

transferred to the police station, where it was opened, photographed a second time, and then stored.[5]

One officer specifically testified that the serial number of the gun was the same as that found at the

crime scene. In addition, the KSP lab chemist testified that the drug evidence from McKinney days

later was sealed and contained the Madisonville evidence label. The district court did not abuse its

discretion in admitting this evidence.

**D. Venire**

Logan's claim that his venire consisted of entirely white citizens and so violated his rights

under the Sixth Amendment is meritless. He simply has not presented any evidence that African-

Americans were "systematically excluded" from the jury panel. Accordingly, he cannot meet his

prima facie case that his constitutional rights were violated. *United States v. Allen*, 160 F.3d 1096,

1101 (6th Cir. 1998).

Similarly, we reject his Equal Protection challenge. Again, Logan points to the fact that his

venire was entirely white. This is not sufficient to meet his prima facie case. He must present some

---

[5]Drug evidence, due to its fungible nature, presents particular concerns. Logan urges us to hold that the district court abused its discretion in admitting the evidence, simply because it was fungible. However, he ignores the fact that the government presented evidence that demonstrated with reasonable probability the whereabouts of the item proffered while in police possession. For example, the government presented police testimony regarding where each piece of drug evidence was found, how it was packaged, labeled, and stored in the evidence room, and that the KSP chemist received it days later, sealed, and with no apparent tampering.

evidence that members of his race—African Americans—were substantially under-represented and that the venire was selected under a practice providing an opportunity for discrimination or a systematic, long-term under-representation of African Americans on jury venires. *See id* at 1104-05.

**E. Motion for a New Trial**

Following his conviction, Logan separately appealed the district court's denial of his motion for a new trial.[6] He argues that McKinney's federal conviction for stealing guns from the evidence room is newly discovered evidence that warrants a new trial. We review the district court's ruling on a motion for a new trial for abuse of discretion. *United States v. Blackwell*, 459 F.3d 739, 769 (6th Cir. 2006).

To win a new trial based on newly discovered evidence, Logan must demonstrate that the evidence (1) is actually new, (2) could not have been discovered earlier with due diligence, (3) is material and not simply cumulative or impeaching, (4) and would likely produce an acquittal. *United States v. Glover*, 21 F.3d 133, 138 (6th Cir. 1994) (quotation omitted). The district court found that the evidence was not new, because Logan knew that McKinney was involved in an "ongoing investigation," that the evidence room was disorganized, and that McKinney misappropriated some of the cash in this case. It also noted that the conviction for stealing firearms was immaterial to Logan's case, because the gun was identified by its serial number. Finally, the district court held that even if the evidence was new and material, it would be unlikely to produce an acquittal.

---

[6]Logan also separately appealed the district court's denial of a sentence reduction pursuant to 18 U.S.C. § 3582(c), because the retroactive crack amendment to the sentencing guidelines did not apply to Logan, an appeal that is still pending before us. *See United States v. Logan*, No. 09-5324.

The district court did not abuse its discretion by denying Logan's motion for a new trial. Even if we assume, *arguendo*, that the conviction was new evidence, McKinney's conviction for stealing guns does not alter our conclusion that the government met its burden to introduce the drugs and the gun into evidence. In addition, McKinney's conviction would have no impact on the chain of custody regarding the gun in this case, because the serial number proved he did not steal Logan's gun. Finally, although the district court erred in introducing at least some of the money into evidence, any error was harmless.

For the foregoing reasons, we **REVERSE** Logan's conviction for count one, **VACATE** Logan's sentence, and **REMAND** for re-sentencing; we **AFFIRM** the decisions of the district court on all other grounds.