**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Leonardo WILLIAMS, Defendant–Appellant.**

No. 15–5080.

United States Court of Appeals, Sixth Circuit.

Feb. 4, 2016.

BEFORE: NORRIS, CLAY, and COOK, Circuit Judges.

CLAY, Circuit Judge.

Defendant Leonardo Williams appeals his conviction and sentence for two counts of possession of cocaine with intent to distribute in violation of 21 U.S.C. § 841. After a three-day trial, the jury found Defendant guilty of the aforementioned offenses. The district court thereafter determined that Defendant qualified as a "career offender" under U.S.S.G. § 4B1.1 and sentenced him to a below-Guidelines term of 217 months' imprisonment. On appeal, Defendant challenges (1) the district court's denial of his motion to suppress allegedly mishandled evidence, (2) the sufficiency of the evidence supporting his convictions, and (3) the procedural reasonableness of his sentence. For the reasons set forth below, we AFFIRM the district court's judgment in full.

## BACKGROUND

Sometime in 2012, informant Darise Burroughs approached Special Agent Mark Chism of the West Tennessee Violent Crime and Drug Task Force. Burroughs asserted that he had recently visited Defendant's residence and had seen Defendant sell cocaine. Burroughs also stated that he had seen an assault rifle in Defendant's residence. Based on Burroughs' tip, Agent Chism arranged for Burroughs to conduct two controlled buys with Defendant: the first on September 13, 2012; the second on September 18, 2012.

The controlled buys were nearly identical. Agent Chism would have Burroughs place a recorded call to Defendant to arrange a purchase of cocaine. Agent Chism would then provide Burroughs with buy money, which had been photocopied so it could later be identified as the money used

in the transaction. Burroughs was also wired with a device that both recorded the transaction and allowed Agent Chism to monitor what was being said in real time. Agent Chism would then search both Burroughs and his vehicle before sending him to Defendant's residence to make the purchase. Chism would follow Burroughs to the residence and listen through the wire while Burroughs entered the residence and conducted the transaction.

Testimony from both Burroughs and Chism, as well as the recordings from the encounters, indicated that the controlled purchases went according to plan. During the first buy, Defendant sold an "eight ball"—roughly three grams—of cocaine to Burroughs for $225. During the second buy, Defendant sold Burroughs 1.5 grams of cocaine for $95. Burroughs testified that during one of the controlled buys, it appeared that Defendant had retrieved the purchased quantity of cocaine from a larger bag behind a movable kitchen cabinet. Defendant then weighed out the cocaine on digital scales and packaged it in an individual plastic baggie.

On September 20, 2012, Agent Chism obtained and executed a search warrant for Defendant's residence. A canine was brought in to assist in the search. Once inside Defendant's residence, the canine alerted to, *inter alia*, a small moveable cabinet in the kitchen. After the canine search, Agent Chism assigned other agents to search specific rooms, to catalogue evidence, and to take pictures of any evidence located. Chism assigned Special Agent Ciesliga to act as evidence custodian; it was Ciesliga's job to inventory any evidence recovered.

Investigators recovered and inventoried the following evidence from Defendant's home: (1) a white plastic shopping bag containing another bag of white powdery substance, found behind the movable kitch-

en cabinet; (2) several baggies located throughout the residence containing either cocaine or a cocaine/MDMA mixture; (3) three digital scales found in a kitchen drawer; (4) a handgun found underneath a chest of drawers in Defendant's bedroom; and (5) a total of $727 in cash found in the bedroom. Neither the photocopied money used during the controlled purchases nor the assault rifle reported by Burroughs was found during the search.

Agent Ciesliga took the evidence found at Defendant's residence to the Drug Task Force Office for overnight storage, and he transported the evidence to the Memphis Police Department ("MPD") Evidence Room the following day. At some point prior to trial, Agent Chism took the evidence to the Tennessee Bureau of Investigation ("TBI") laboratory for analysis. Once there, forensic scientist Brock Sain tested the substances found in Defendant's residence. According to Sain, the bag taken from behind the movable kitchen cabinet tested negative for controlled substances. However, the other substances found in Defendant's residence tested positive. Sain's tests revealed that a total of 19.62 grams of cocaine, 2.61 grams of MDMA, and 0.96 grams of a cocaine/MDMA mixture were recovered from Defendant's residence. After testing was complete, the evidence was taken back to the MPD Evidence Room for storage.

In October 2013, Agent Chism learned that the bag of powdery substance found behind the cabinet in Defendant's kitchen tested negative for cocaine. Chism was taken aback, because he remembered that the substance in the bag had looked and smelled like cocaine, and that the canine had alerted to it during the search of Defendant's residence. Chism called TBI to verify the report he had received. He then called a Major Borgers at the MPD Evidence Room and requested a visit to see the evidence again for himself. Agents Chism and Ciesliga traveled to the Evidence Room and met with Borgers and one of Borgers' supervisors. Together, the four of them broke the seal on the evidence envelope containing the substance found behind the cabinet. Borgers then conducted a "Scott Reagent Field Test" on the substance, which came back negative for the presence of cocaine.

Agent Chism later testified that no paperwork or report was generated by the MPD Evidence Room regarding this visit. Chism asserted that this was probably because paperwork is typically generated only when evidence is removed from the MPD Evidence Room, and thus no report was generated because the bag of substance was never removed from the room. Agent Ciesliga likewise testified that he was unaware of any reports regarding the visit and testing that day.

The government first indicted Defendant on March 28, 2013. After a series of revisions to the indictment, the government filed a final, five-count indictment against Defendant on December 12, 2013. Counts One and Two alleged that on September 13 and September 18, 2012 (the dates of the controlled purchases), Defendant possessed with intent to distribute, and did distribute, cocaine in violation of 21 U.S.C. § 841(a)(1). Counts Three, Four, and Five alleged crimes committed on September 20, 2012 (the day Defendant's residence was searched). Count Three charged Defendant with being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g). Count Four charged defendant with possession, with intent to distribute, 19 grams of cocaine in violation of 21 U.S.C. § 841(a)(1). Count Five charged defendant with possession of a firearm in furtherance of a drug trafficking crime in violation of 18 U.S.C. § 924(c).

.On August 29, 2013, Defendant filed a Motion to Suppress the Evidence recovered during the search of his home; the motion was referred to a magistrate judge. Two hearings were held on Defendant's motion, at which the parties discussed and presented evidence on, *inter alia,* Agent Chism's October 2013 visit to the MPD Evidence Room and Defendant's related allegation that evidence had been mishandled. On May 19, 2014, the magistrate judge issued a Report and Recommendation denying Defendant's motion to suppress. On July 1, 2014, the district court filed an order adopting in part and rejecting in part the magistrate's Report and Recommendation. The court agreed with the magistrate's assessments that: (1) Agent Chism provided a credible explanation for his October 2013 visit to the MPD Evidence Room, and (2) any inconsistencies in the testimony of Agents Chism and Ciesliga did not render their testimony—or the physical evidence—so unreliable as to warrant exclusion of the allegedly mishandled evidence. Finally, though the district court agreed with the Defendant regarding two factual inaccuracies contained in the Report and Recommendation, the court concluded that those inaccuracies did not bear on the correctness of the Report's ultimate disposition.

After a three day trial, a jury found Defendant guilty on counts One and Two— the counts stemming from the controlled purchases. The jury hung on Counts Three, Four, and Five, which all related to the evidence obtained from Defendant's home during execution of the search warrant. The district court thereafter granted the government's motion to dismiss the three counts on which the jury could not reach a decision.

A Presentence Investigation Report ("PSR") was prepared for use at sentencing. The PSR found that Defendant qualified as a career offender under section 4B1.1 of the Sentencing Guidelines because he had two prior felony convictions: the first for attempted first degree murder; the second for possession with intent to sell cocaine. Application of the enhancement placed Defendant's criminal history category at VI and his offense level at 34. *See* U.S.S.G. § 4B1.1. Defendant's Guidelines-recommended sentencing range was therefore set at 262 to 327 months' imprisonment.

On December 5, 2014, the district court held its first sentencing hearing. After considering the parties' arguments, the court determined that the career offender enhancement applied to Defendant. The court opined, however, that it was appropriate to consider the disparity between Defendant's sentence with and without the career offender enhancement. The parties and the court therefore discussed what Defendant's sentence would have been without application of the career offender enhancement. At the request of the government, the sentencing hearing was continued to allow the parties to marshal additional proof on that issue.

On January 9, 2015, the district court held a second sentencing hearing. At that hearing, the government proffered much of the same evidence presented at trial. Based on this evidence, the court concluded Defendant's without-enhancement offense level would have been 22, with a criminal history category of V; the sentencing range would have been 77 to 96 months. Notably, this without-enhancement calculation did not take into account the November 1, 2014 changes to the Sentencing Guidelines. Under those changes, Defendant's offense level would have been two levels lower.

After further argument as to why the court should or should not depart from the with-enhancement Guidelines range of 22

to 27 years, the court sentenced Defendant to a below-Guidelines term of 18 years' imprisonment on both counts of conviction, to run concurrently. Defendant timely appealed.

## DISCUSSION

### I. DEFENDANT'S MOTION TO SUPPRESS ALLEGEDLY MISHANDLED EVIDENCE

#### Standard of Review

In considering the denial of a motion to suppress evidence, we review a district court's findings of fact for clear error and legal conclusions *de novo. United States v. Smith,* 594 F.3d 530, 535 (6th Cir.2010). "Where a district court denies a motion to suppress, this court considers the evidence in the light most favorable to the government." *United States v. Hinojosa,* 606 F.3d 875, 880 (6th Cir.2010) (internal brackets and quotation marks omitted) (quoting *United States v. Carter,* 378 F.3d 584, 587 (6th Cir.2004) (en banc)). Furthermore, because chain of custody issues ultimately concern the admissibility of evidence, *see United States v. Allen,* 619 F.3d 518, 525 (6th Cir.2010), the district court's decision to admit any challenged evidence is reviewed for abuse of discretion. *See United States v. Allen,* 106 F.3d 695, 700 (6th Cir.1997); *see also Cummins v. BIC USA, Inc.,* 727 F.3d 506, 510 (6th Cir.2013) ("The district court has broad discretion to determine questions of admissibility....").

#### Analysis

■ Problems with the chain of custody of evidence typically go to the weight of that evidence rather than its admissibility. *Allen,* 619 F.3d at 525. Thus, we have held that physical evidence is admissible so long as "the possibilities of misidentification or alteration are 'eliminated, not absolutely, but as a matter of reasonable probability.'" *Allen,* 106 F.3d at 700 (quoting

*United States v. McFadden,* 458 F.2d 440, 441 (6th Cir.1972)). In other words, "[m]erely raising the possibility of tampering or misidentification is insufficient to render evidence inadmissible." *United States v. Combs,* 369 F.3d 925, 938 (6th Cir.2004).

For example, in *Allen,* 619 F.3d 518, the defendant argued that a bag of cocaine found during his arrest was improperly admitted into evidence because the original evidence bag into which the drugs were placed was destroyed and replaced with a different evidence bag, and because the reported weight of the seized drugs diminished over time. 619 F.3d at 525. We concluded that "it does not appear that there was anything improper about ... replacement of the original evidence bag, and [one investigator] provided several explanations for the decrease in weight. At most, [defendant's] arguments merely raise the possibility of tampering." *Id.* We therefore held that the district court did not abuse its discretion by admitting the challenged evidence. *Id.; see also United States v. Lewis,* 363 Fed.Appx. 382, 390 (6th Cir.2010) (affirming admission of allegedly mishandled evidence where "[t]he undisputed evidence presented at trial indicates that the officers carefully documented each step between recovery of the [evidence] and its placement into the evidence vault").

Defendant argues that Agent Chism's October, 2013 visit to the MPD Evidence Room to re-test the substance found behind the kitchen cabinet does not merely "raise the possibility that someone tampered with the evidence," but in fact shows "that someone actually had." (Def.'s Br. at 35–36 (emphasis omitted).) And though Defendant concedes that he "was not ultimately charged with the evidence in question," he nonetheless asserts that "[t]he

fact that ... the evidence was tampered with called the remainder of the investigation and the chain of custody methods into question." (*Id.* at 36.)

We disagree. Although the procedures employed during Chism's follow-up visit to the Evidence Room need not necessarily be condoned, labeling what occurred during that visit as "evidence tampering" requires a particularly uncharitable take on the facts. Viewing the facts in the light most favorable to the government, as we must do on review of a denied motion to suppress, *Hinojosa*, 606 F.3d at 880, Chism was merely attempting to assuage his disbelief in the results of the TBI Lab test, and he did so in such a way as to reduce the appearance or possibility of tampering.

At the first suppression hearing, for example, Chism testified that upon learning the results of TBI's test on the substance found behind the kitchen cabinet, "[he] was surprised because it smelled like cocaine, the dog had alerted on it, and [he] actually thought that there may have been a mistake made." (R. 71, PageID 174.) Chism averred that this was his sole motive for his October 2013 visit to the Evidence Room, and he reaffirmed this motive at the second suppression hearing. Defendant asks us to disregard Chism's asserted motive because the circumstances of the visit suggest that his motives were more nefarious. Yet, when viewed in the light most favorable to the government, the facts are more supportive of the opposite inference: Chism freely admitted to visiting the Evidence Room and to requesting the presumptive test. Indeed, Chism testified that the presumptive test results came back negative, thereby verifying the TBI Lab's results—a fact beneficial to Defendant.

Furthermore, at both suppression hearings, Chism testified as to the precautionary measures taken during his October 2013 visit to the Evidence Room. Chism did not visit the Evidence Room by himself; rather, he asked that Agent Ciesliga, Major Borgers, and another Evidence Room technician be present. Nor did Chism handle the bag of substance himself: together, the officers watched as Borgers performed the presumptive test. Chism later testified, "I didn't touch [the evidence] that day. I didn't handle it in any way. I just saw it." (R. 72, PageID 223.) And though Agent Ciesliga could not remember whether Chism himself handled any evidence that day, Ciesliga's testimony likewise indicated that no evidence was tampered with.

Both the magistrate and the district court found the agents' testimony credible, despite any perceived inconsistencies. On review of the record, we find no reason to believe that these credibility determinations were clearly erroneous. *See United States v. Wright*, 747 F.3d 399, 407–08 (6th Cir.2014) ("A factual finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed."). To the extent any inconsistencies in the agents' testimony called their credibility into question, the district court did not abuse its discretion by leaving such questions to the jury. *See Allen*, 619 F.3d at 525.

In sum, we find unavailing Defendant's assertion that evidence was "tampered with" during the October, 2013 visit: conducting a presumptive test in an evidence room and in the presence of three witnesses does not easily fit the mold of "tampering"—especially when those involved in the alleged tampering freely admit that their test confirmed lab test results favorable to Defendant. As in *Allen*, we find that "[a]t most, [defendant's] arguments

merely raise the possibility of tampering." *Id.* Such a possibility, however, "is insufficient to render evidence inadmissible." *Combs,* 369 F.3d at 938.

Because we conclude that evidence was not "tampered with" during Chism's October 2013 visit to the Evidence Room, we disagree with Defendant's contention that the visit necessarily calls into question the legitimacy of all the evidence in this case. We note, however, that a panel of this Court rejected a similar argument in *United States v. Logan,* 372 Fed.Appx. 601 (6th Cir.2010). In *Logan,* the defendant introduced evidence at trial suggesting that an evidence room technician kept the evidence room in a state of "disarray," mishandled cash evidence, and was the subject of an ongoing investigation for selling evidence guns. *Id.* at 605. The defendant argued "that because [the technician] mishandled the funds and was under investigation for selling evidence guns for money, he necessarily tampered with the gun and drug evidence" from the defendant's case. *Id.* at 607. In response, we observed that

> [w]e have never held that evidence of the mishandling of one piece of evidence requires that separate pieces of evidence in the same case be necessarily excluded. The question is, instead, whether the government can meet its burden to prove chain of custody with respect to each piece of evidence.

*Id.*

The facts of this case are far less supportive of an inference of ubiquitous mishandling than the facts of *Logan.* There is no suggestion in this case that the MPD evidence room was in a general state of disarray; and to the extent Chism "mishandled" evidence, his motivations for doing so were benign. As we stated above, Defendant's cited facts suggest, at most, a mere possibility tampering. But to deny the government the opportunity to "prove chain of custody with respect to each piece

of evidence" at trial, *id.,* and to take questions of weight and credibility out of the hands of the jury entirely, Defendant must show more than a mere possibility of tampering. *Combs,* 369 F.3d at 938. We therefore conclude that the district court did not err in denying Defendant's motion to suppress, and that it did not abuse its discretion by admitting the challenged evidence.

## II. SUFFICIENCY OF THE EVIDENCE SUPPORTING DEFENDANT'S CONVICTIONS

### Preservation and Standard of Review

To properly preserve a challenge to the sufficiency of the evidence supporting her conviction, a defendant must file a motion for judgment of acquittal under Federal Rule of Criminal Procedure 29. *United States v. Frazier,* 595 F.3d 304, 306 (6th Cir.2010). Here, Defendant failed to move for judgment of acquittal before the district court. In such cases, this Court reviews the sufficiency of the evidence only for plain error resulting in a "manifest miscarriage of justice." *United States v. Tragas,* 727 F.3d 610, 617–18 (6th Cir. 2013) (citing *Frazier,* 595 F.3d at 306). "A miscarriage of justice exists only if the record is devoid of evidence pointing to guilt." *Id.* (quoting *United States v. Roberge,* 565 F.3d 1005, 1008 (6th Cir.2009)).

### Analysis

■ Defendant challenges the sufficiency of evidence supporting his convictions on Counts One and Two, both of which stem from his sale of cocaine to informant Darise Burroughs during the controlled buys on September 13 and September 18, 2012. We agree with the district court that the evidence of guilt on these counts was "overwhelming." (R. 153, PageID 1504.) Evidence presented at trial established that on two separate occasions, Burroughs placed recorded calls to Defendant to arrange a sale of cocaine; Burroughs

was equipped with a recording device; he was searched; he was followed to Defendant's residence; and once he arrived at Defendant's residence, he purchased the pre-arranged quantity of cocaine. On both occasions, Burroughs observed Defendant weigh the cocaine before packaging it in an individual plastic baggie. Chism and Burroughs' accounts of the controlled buys were corroborated by digital audio recordings taken by a recording device worn by Burroughs; the recordings were played at trial. The substances recovered from these purchases tested positive for cocaine.

In view of these facts, we cannot say that the record is "devoid of evidence pointing to guilt" on the two counts for which Defendant was convicted. *Tragas*, 727 F.3d at 617. Indeed, given the evidence against him, Defendant's sufficiency of the evidence challenge would fail even under the applicable standard of review had Defendant filed a Rule 29 motion. Under that standard, the Court is "limited to ascertaining whether, viewing the evidence in the light most favorable to the government, ... '*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *United States v. Carmichael*, 232 F.3d 510, 519 (6th Cir.2000) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979)). We have no doubt that when viewed in the light most favorable to the government, the testimony, audio recordings, and physical evidence relating the controlled buys could lead a "rational trier of fact [to find] the essential elements of the crime beyond a reasonable doubt." *Id.*

## III. PROCEDURAL REASONABLENESS OF THE DISTRICT COURT'S SENTENCE

### Standard of Review

This Court "review[s] a sentence imposed by the district court for procedural and substantive reasonableness under an abuse-of-discretion standard." *United States v. Brown*, 372 Fed.Appx. 643, 645 (6th Cir.2010) (citing *Gall v. United States*, 552 U.S. 38, 52, 128 S.Ct. 586, 169 L.Ed.2d 445 (2007)). Objections not properly raised during sentencing are considered forfeited and therefore are reviewed only for plain error. *United States v. Bostic*, 371 F.3d 865, 872–73 (6th Cir.2004).

### Preservation of the Issue

At sentencing, Defendant argued that calculation of his base offense level should not include the criminal acts alleged in Counts Three, Four, and Five of his indictment, on which the jury could not reach a verdict, because "a jury was not convinced that Mr. Williams" committed those crimes. (R. 128, PageID 510–11.) Defendant also argued that the district court should consider the disparity between Defendant's possible sentence with and without the career offender enhancement when making its sentencing decision. The parties and the court discussed these objections at length, and the objections were therefore properly preserved for review. *Cf. Bostic*, 371 F.3d at 871 (holding preservation of objection at sentencing requires defendant to "object with that reasonable degree of specificity which would have adequately apprised the trial court of the true basis for his objection" (internal quotation marks omitted)).

Defendant concedes, however, that although addressed in the Addendum to Defendant's PSR, no objection regarding the applicability of the November 1, 2014 Amendment to the Guidelines was properly raised before the district court. Thus, the issue of the effect of the revised Guidelines on Defendant's without-enhancement sentence was not properly preserved.

### Analysis

■ When reviewing a sentence for procedural reasonableness, we examine whether the district court committed a significant procedural error, including "failing to calculate (or improperly calculating) the Guidelines range, treating the Guidelines as mandatory, failing to consider the [18 U.S.C.] § 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence—including an explanation for any deviation from the Guidelines range." *Gall*, 552 U.S. at 51, 128 S.Ct. 586; *see also Brown*, 372 Fed.Appx. at 645. Thus, "a sentence may be procedurally unreasonable if the district court did not consider the applicable Guidelines range or neglected to consider the factors set forth in 18 U.S.C. § 3553(a), and instead simply chose a sentence that the judge deemed appropriate." *United States v. Vowell*, 516 F.3d 503, 510 (6th Cir.2008) (citing *United States v. Collington*, 461 F.3d 805, 808 (6th Cir.2006)). In sum, "[t]he district court must provide an articulation of the reasons [it] reached the sentence ultimately imposed," that "allow[s] for meaningful appellate review." *United States v. Solano–Rosales*, 781 F.3d 345, 351 (6th Cir.2015) (citations and internal quotation marks omitted).

Defendant argues that "[t]he district court used a drug quantity that was not proven to the jury beyond a reasonable doubt" to calculate Defendant's without-enhancement sentence. (Def.'s Br. at 52.) Defendant also notes that during the sentencing hearing, the parties and the court "lost sight of the fact that as of November 1, 2014, the Guidelines manual reduced the base offense levels in the Drug Quantity Table at USSG § 2D1.1(c) by two levels." (*Id.* at 30 n.5, 53–54.) At first blush, these arguments appear to allege that the district court's sentence was procedurally un-reasonable because it "fail[ed] to calculate (or improperly calculate[ed] ) the Guidelines range." *Gall*, 552 U.S. at 51, 128 S.Ct. 586. However, Defendant concedes that these alleged errors ultimately had no effect on the court's calculation of his Guidelines range because he received the career offender enhancement. *See* U.S.S.G. § 4B1.1 (providing that the career offender base offense level applies where it is greater than the applicable base offense level under § 2D1.1). Defendant does not challenge application of that enhancement on appeal.

Defendant instead argues that because the district court considered the disparity between the Guidelines' recommended sentence with and without the career offender enhancement, if the district court had properly calculated his without-enhancement sentence, the disparity would have been larger, thus leading the district court to grant an even larger downward variance. These arguments are more appropriately analyzed as the "select[ion][of] a sentence based on clearly erroneous facts," *Gall*, 552 U.S. at 51, 128 S.Ct. 586, namely, an erroneously calculated without-enhancement sentence. We therefore analyze the arguments under the framework developed for assessing potential procedural error.

Defendant's first argument—that "[t]he district court used a drug quantity that was not proven to the jury beyond a reasonable doubt" to calculate the without-enhancement sentence (Def.'s Br. at 52)— is unavailing. Defendant concedes that "[t]his Circuit follows the rule that a defendant's conduct, though not proven at trial, can still be used as relevant conduct to determine an appropriate sentence." (Def.'s Br. at 52 (citing *United States v. Jones*, 641 F.3d 706, 713 (6th Cir.2011)).) This is so, moreover, "so long as that conduct has been proved by a preponderance of the evidence." *Jones*, 641 F.3d at

712. In the instant case, the district court relied on the record developed at trial to determine that a preponderance of the evidence supported the drug quantity calculations contained in the PSR. On review of the record, we agree that the district court's drug quantity calculations were supported by a preponderance of the evidence, *id.*, and that these calculations therefore do not constitute "clearly erroneous" facts upon which Defendant's final sentence was based. *See Gall*, 552 U.S. at 51, 128 S.Ct. 586.

Defendant's second argument—that the district court failed to account for a change in Guidelines—is more persuasive. The November 1, 2014 Guidelines Amendment reduced the base offense level for Defendant's without-enhancement sentence by two levels, from 20 to 18. *See* U.S.S.G. § 2D1.1(c). Thus, when properly calculated, Defendant's final without-enhancement offense level was 20 rather than 22.[1] *United States v. Welch*, 689 F.3d 529, 532–33 (6th Cir.2012) ("A district court generally applies the version of the Sentencing Guidelines in place at the time of sentencing unless applying the current version would amount to a violation of the Ex Post Facto Clause."). This error was "clear" not only because district courts are required to apply the version of the Guidelines Manual in effect at the time of sentencing, *see* U.S.S.G. § 1B1.11(a) & (b), but also because the first addendum to Defendant's PSR noted the November 1, 2014 change.

Moreover, the record indicates that the district court did, to some extent, "select[ ] [its] sentence based on" this clearly erroneous fact. *Gall*, 552 U.S. at 51, 128 S.Ct. 586. The court continued the first sentencing hearing so the government could prepare arguments and evidence regarding Defendant's without-enhancement sentence. And in its sentencing colloquy at Defendant's second sentencing hearing, the court stated:

> [Court]: The defense position was initially that we had a really, really low range if you didn't look at the career offender status. And therefore, we're looking at a 12 and a 5, Category 5, and that just created that type of disproportionality that would cause great concern in the sentencing process and that we need to be concerned with that.
>
> So we went back and recalculated. I think it was the proper thing to do, and we ended up with a 22 and a 77 to 96 month range. And it at least gives you a better perspective on where we are; that while it's not the range, it's the what we call an alternative range, the range that would exist for a non-career offender.

(R. 153, PageID 1545.)

However, because Defendant never raised this issue before the district court, the error is subject to "plain error" review. *See United States v. Wilson*, 614 F.3d 219, 223 (6th Cir.2010) ("Because [defendant] failed to raise her procedural claim before the district court, we must evaluate it under a standard of plain error."); *United States v. Abboud*, 441 Fed.Appx. 331, 334 (6th Cir.2011) (holding defendant's "failure to raise the issue of the applicability of the [correct] manual at any … sentencing hearings … constitutes a forfeiture of the claim that he was erroneously sentenced, which cannot now be considered without a showing of plain error").

On plain error review, a district court's consideration of a clearly erroneous fact is not enough, on its own, to warrant resentencing. Rather, the defendant must also show, *inter alia*, that the error "affected [his] substantial rights." *United States v. Vonner*, 516 F.3d 382, 386 (6th Cir.2008)

---

1. The district court applied a two-level enhancement for possession of a dangerous weapon in connection with the charged offenses.

(en banc). "A sentencing error affects a defendant's substantial rights when there is a reasonable probability that, but for the error, she would have received a more favorable sentence." *Wilson*, 614 F.3d at 223–24 (citing *United States v. Baker*, 559 F.3d 443, 454 (6th Cir.2009)). In *Wilson*, for example, we held that a district court's consideration of a clearly erroneous fact affected the defendant's substantial rights where the district court opined that the erroneous fact constituted "serious circumstances" and "explicitly acknowledged that these serious circumstances provided a basis for a lengthy sentence." *Id.* at 225.

We conclude that the record in this case does not establish "a *reasonable probability* that, but for the error, [Defendant] would have received a more favorable sentence." *Wilson*, 614 F.3d at 223 (emphasis added). Although the district court found calculation of Defendant's without-enhancement sentence important enough to warrant a second sentencing hearing, the record indicates that the calculation ultimately played little part in the court's grant of a downward variance. The only explicitly acknowledged bases for granting that variance were the reports of Defendant's exemplary behavior while incarcerated during proceedings in this case. The district court's lengthy and laudatory discussion of those reports—and their bearing on the court's decision to grant a downward variance—stands in stark contrast to the court's statement that the without-enhancement sentence calculation "gives you a better perspective on where we are . . . ." (R. 153, PageID 1545.) Thus, unlike *Wilson*, the district court did not "explicitly acknowledge[ ] that [the Defendant's without-enhancement sentence] provided a basis" for the downward variance in his sentence. *Wilson*, 614 F.3d at 225 (emphasis added).

Moreover, the above-quoted discussion of the without-enhancement sentence in the district court's sentencing colloquy was cabined to a brief summary of the parties' arguments. In contrast to that brief summary, the court discussed at length the policies behind applying a sentence closer to the with-enhancement Guidelines range: the need for adequate deterrence; the need to protect the public from persons who have "made a decision to make it a career to be a violator of the law" (R. 153, PageID 1547–48); the fact that, as evidenced by the long sentences recommended for career offenders, "Congress takes this very seriously" (*id.* at 1550); and that giving adequate weight to the Guidelines' recommended sentence helps to "take[ ] the subjectivity out of the analysis" (*id.*) and works to "avoid [an] unwarranted sense of disparity" between sentences given to different defendants across different geographical areas. (*Id.* at 1552.) That Defendant's sentence of 216 months was far closer to the 262 to 327 month with-enhancement sentence than to the 77 to 96 month without-enhancement calculation suggests that the above-cited policies ultimately outweighed any mitigating factors.

For these reasons, we cannot conclude that there is "a *reasonable probability* that, but for the error, [Defendant] would have received a more favorable sentence." *Wilson*, 614 F.3d at 223 (emphasis added). Thus, the district court's failure to consider the November 1, 2014 Amendment to the Guidelines when calculating Defendant's without-enhancement sentence did not constitute "plain error."

## CONCLUSION

For the foregoing reasons, we **AFFIRM** the district court's judgment in full.